Caruthers, J.,
delivered the opinion of the Court:
On the 25th January, 1854, the complainant sold to the defendant 3,300 acres of land, in Dyer county for five dollars per acre; one-third to be paid on the *591 first of tbe succeeding May, and the other two-thirds in one and two years, from that time.* For the first payment, a bill was drawn upon Eckleford .& Weaver, of Mobile, Alabama, and for the others, his notes were given. The bill was not paid at maturity, and was returned protested. The defendant was a citizen of Alabama.
On the 20th June, 1854, this bill was filed attaching a tract of land of 1575 acres, owned by the defendant, in the same county. The prayer of the bill is resisted by the defendant, in his answer upon two grounds: First, that the consideration of the land cannot be collected, because the contract was void by a stipulation in the bond for title; and second, that the sale was fraudulent on account of the misrepresentations or concealment by the vendor, of material facts in relation to the land. The cross bill is filed to have the trade rescinded, and the bill and notes perpetually enjoined upon the two grounds, stated in the answer.
The first ground is rested upon a clause in the title bond in these words: “ But should said first payment not be made, on or before the first of May next, then this contract to be void, but in the event it is, and the two others are paid and fully discharged, I bind myself, my heirs, &c., to make a good warranty deed to said land.” The Chancellor dismissed the bill upon the ground that the defendant could refuse to pay, and take advantage of this condition. Whether this was erroneous or not, is the main question in this case, and it must depend upon authority. The words are plain enough as far as they go, and *592 if taken in their literal sense, the contract is to be void, if the rtioney is not paid at the time, but as to whom and at whose option, is a question of construction. Is this stipulation for the benefit of the vendor or vendee, or both, and is it the privilege of either of them to take advantage of it, or only the vendor?
The time of this payment cannot be regarded as of the essence of the contract — it does not fall in that class of cases. It is simply a condition to stimulate the vendee to promptness in payment, upon the failure of which, at the election of the seller, he should lose the benefit of his purchase. What else could have been the intention of the parties? Can it be for a moment supposed, that it was in the mind of either of the contracting parties that this, term in the contract would place it in the power of the purchaser, by failing to comply with his separate and unconditional obligation to pay the money at a day fixed, to annul the contract, against the will of the other party? ' This would place the game all in his own hands, and would not be mutual. If land should rise and no disaster happen to the property, he would pa}', but if it should fall, or a better prospect open to him at some other point, or a different and' better investment offer, or his money in any way become more valuable, upon that construction, he would have nothing to do, but violate his obligation to pay the money ■ and avoid the contract. This would present a case where one party would be all the time bound, and the other not. It cannot well be supposed that any person competent to contract, would intentionally *593 place bimself so completely in the power of the other party. '
But the authorities on. this point are conclusive, and they are to the effect, that such a condition is for the benefit of the vendor and may be insisted upon, or waived at his election, where nothing appears in the contract or the circumstances, to evince a different intention. This construction was first applied ;to leases with condition to be void in case of failure to pay the rent.—4 Barn. and Ald., 402; 6 Eng. Com., L. R., 462; 6 Barn. & Cress., 519; 13 Com. L. R., 241; 1 Denio. 518. It applies equally to contracts for the sale of land—5 Cowen, 271; Law vs. Manning, 8 Yerg., 435. These authorities and others to the same effect, place the doctrine upon the ground of the intention of the parties, and that a party cannot .be allowed to take advantage of his own wrong and negligence, in failing to comply with his contract. To permit this would certainly be against all correct principles, and in conflict with the first rules of morality and honesty. It is no answer to this, that it gives one party the power to annul and avoid the contract, when the other cannot; because — first, such must have been the intention of the parties from the nature of the case, and second, the other party has it in his power by complying with his engagements and doing his duty to avoid the .breach, and he can be allowed no advantages by a failure to do so. If the party for whose benefit the condition was inserted, chooses to waive the forfeiture, and insist upon the contract, the party in default has no right to complain or object. Upon the other ground assumed in the *594 cross bill to rescind, this contract, we think the law is also with the vendor. Without going into the facts, on this point, it is sufficient to say that such a case of misrepresentation, or concealment of facts,, or of mutual mistake as is recognized by the law as sufficient to authorize a rescission of this contract, is not made out.
It is true that a large portion of the land was subject to overflow, but the facts in relation to that, were as well known to McBurney, by his own observation and the information derived from the neighbors, as to the other party; and it appears that he carefully availed himself of these sources of information before he proposed to buy. One of the lines was open and the location of one of the corners uncertain or . controverted. Where this line would run was- a matter of conjecture, as it had never been marked. Its location would, to some extent, affect the value of the land, because of the situation of the ground, as to elevation. But that has not yet been tested, and we do not know whether the opinions as to its locality at the time are correct or not; still, if a mistake did exist in relation to the corner or line, it was not such as to avoid the contract for fraud or mistake. There was no misrepresentation, or [concealment in relation to it, nor was there any such mutual mistake, if indeed there was a mistake at all, as is recognized by the law on that subject, to authorize a rescission.
The principles of law applicable to these questions are so well settled and familiar, that it is unnecessary again to announce or discuss them, but it only *595 remains now to apply them to the facts and circumstances of the cases as they arise. We cannot suppose from our examination of the facts, that this point in the case had very much influence on the mind of the Chancellor, but that his decree was based mainly upon the other point.
The result is, that the decree will be reversed, the cross bill dismissed, and the prayer of the original attachment bill granted.
The case will be remanded for the execution of the decree.